IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Antione S. Lee, | : | |
| Plaintiff | : | Civil Action 2:13-cv-00087 |
| v. | : | Judge Marbley |
| Brad Eller and Dr. Eddy, | : | Magistrate Judge Abel |
| Defendants | | |
| | : | |

**Report and Recommendation**

This matter is before the Magistrate Judge on defendant Dr. Eddy's October 23, 2013 first motion for summary judgment (doc. 24).

The complaint alleges that Dr. Eddy, ODRC's Chief Medical Officer, denied Antione Lee[1] hormonal treatment despite that fact that the treatment is medically necessary and that she was receiving that treatment before her transfer to the Belmont Correctional Institution. Because she has been denied the treatment, Lee is depressed and has suffered adverse physical side effects.

**I.    Arguments of the Parties**

    **A.    Defendant Dr. Eddy's Motion for Summary Judgment**

Defendant Dr. Eddy argues that this case should be dismissed pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a) ("PLRA"), which requires a prisoner

---

[1] Antione Lee identifies as a female.

1

to properly exhaust all available administrative remedies prior to filing an action in federal court challenging her conditions of confinement.

According to defendant, plaintiff did not exhaust the inmate grievance procedure against Dr. Eddy prior to filing her complaint. Defendant maintains that Lee's grievance was untimely, and the Office of the Chief Inspector clearly notified plaintiff of this procedural failing. Additionally, plaintiff only named Correctional Officer Ross and Unit Manager Eberlin in her grievance. Plaintiff did not exhaust her administrative remedies against Dr. Eddy because she failed to give Dr. Eddy "fair notice" of the allegations that form the basis of her claim against him.

Dr. Lee maintains that plaintiff filed two informal complaints in February 2012 concerning her hormonal treatment, but she did not appeal either of these informal complaints through the second and thirds steps of the grievance procedure. Simply filing an informal complaint is not enough to exhaust an inmate's administrative remedies. Five months later, plaintiff filed two more informal complaints, one of which concerned hormonal treatment. Plaintiff appealed this complaint through all three steps of the inmate grievance procedure. In the informal complaint, plaintiff complained that she was not receiving hormone medication. She noted that she spoke to the mental health department and Health Care Administrator Eller, but she did not mention Dr. Eddy. In response, plaintiff was informed that her complaints about medications needed to be addressed to the medical department.

2

In her August 15, 2012 grievance, plaintiff did not mention Dr. Eddy or any other ODRC employee in connection with her statement that she had not been receiving her hormone medication. On August 31, 2012, Inspector Riehle responded to plaintiff's grievance and stated that according to her medical file, Lee did not meet the medical criteria for hormonal treatment pursuant to ODRC Policy 68-MED-01. Plaintiff appealed this disposition of her grievance to the Chief Inspector on September 12, 2012. She also included with her appeal a three page letter on the same issues, but defendant maintains that the letter is not part of the grievance procedure because only forms designated by the Office of the Chief Inspector may be used to file informal complaints, grievances, and appeals.

Assistant Chief Inspector Parks, R.N. responded to plaintiff's appeal. She denied the portion of Lee's appeal concerning hormonal treatment as untimely. She also concluded that the medical staff was providing plaintiff with the proper medical care.

Defendant argues that because plaintiff's complaint was rejected as untimely, she did not exhaust her administrative remedies. Defendant maintains that a prison may properly preserve its right to subsequently seek dismissal of a prisoner's federal lawsuit for failure to exhaust where it both denies the grievance on its merits and denies it for failure to comply with administrative procedures.

Defendant also argues that plaintiff's complaint failed to comply with the requirement of specificity. Plaintiff failed to exhaust her claim by not complying with Ohio's procedural rules that require inmate grievances to contain specific information,

including the names and actions of the personnel involved. Dr. Eddy was not named in any informal complaint, grievance or appeal. Plaintiff also failed to mention any actions by Dr. Eddy concerning the allegations in this case. Because plaintiff failed to provide Dr. Eddy with "fair notice" of her claim against him, her claim must be dismissed. Lee's blanket statement that she was being denied hormonal treatment did not give enough factual context to put Dr. Eddy on notice that plaintiff would claim he is responsible for plaintiff receiving hormonal treatment.

Defendant further argues that because Lee cannot retroactively comply with the timeliness requirement of Ohio's inmate grievance procedure, this case should be dismissed with prejudice.

### B. Plaintiff Antione S. Lee's Response in Opposition

Plaintiff argues that Dr. Eddy's motion for summary judgment should be denied because she properly exhausted this matter or, in the alternative, there are genuine issues of material fact in dispute precluding summary judgment. Plaintiff also maintains that defendant's motion is premature because no discovery has been conducted in this case.

In her declaration, Lee states that she was first diagnosed as transsexual in 1997 by the chief doctor at the Hamilton County Justice Center. She has been taking estrogen hormones continuously since 1997. In February 2012, Lee's hormone therapy was abruptly discontinued. From March 2012 through the present time, Lee's body has

4

undergone the masculinization process causing her to experience severe psychological and physical effects of estrogen hormone withdrawal.

In February 2012, Lee filed two informal complaints regarding the discontinuation of her estrogen hormone therapy on February 27, 2012. She sent one to the mental health department and one to the medical department. On March 9, 2012, Lee was transferred to the Belmont Correctional Institution. She did not receive responses to her informal complaints prior to being transferred. At that time, Lee could not identify the prison staff responsible for discontinuing her medication. When she arrived at BeCI, Lee submitted requests and met with medical and mental health staff regarding hormone therapy. She was advised that medical staff were working to reinstate her hormone therapy.

On August 9, 2013, plaintiff filed an informal complaint requesting that she receive estrogen therapy. An August 15, 2012 response stated that medical issues and medications were handled by the doctor and that this would have to be "resolved by medical for your first complaint." Doc. 24-5. On August 15, 2012, Lee filed a "Notification of Grievance" requesting estrogen hormone therapy. The November 31, 2012 "Disposition of Grievance" stated that plaintiff did not meet the criteria for hormone therapy, which was discontinued prior to her arrival at BeCI. Doc. 24-8. On September 12, 2012, Lee filed an "Appeal to the Chief Inspector" requesting estrogen therapy. On November 10, 2012, Mona Parks issued a decision and stated that the Lee's

5

grievance was untimely. Ms. Parks also stated that the medical staff at the facility was providing her with proper care within ODRC guidelines.

Plaintiff argues that her grievances were timely filed. Section 5120-9-31(K)(1) of the Ohio Administrative Code provides that an inmate shall file an informal complaint within fourteen calendar days of the date of the event giving rise to the complaint. Plaintiff maintains that ODRC's refusal to provide estrogen hormone therapy is an ongoing deprivation of medical care. The discontinuation of Lee's estrogen therapy in February 2012 is not the only event triggering the grievance process. Plaintiff argues that when an inmate complains about a prison's failure to treat a chronic medical condition, a grievance that identifies the persistent failure to address that condition is timely as long as the prison officials retain the power to do something about it.

In addition to concluding that plaintiff's grievance was not timely filed, the Chief Inspector also used a decision on the merits by concluding that the medical staff was properly providing her with medical care. Plaintiff maintains that the fact that a final decision on the merits was issued is important because under Sixth Circuit law, an inmate met the PLRA exhaustion requirement when the prisoner chose to address his grievance on the merits despite the determination that the grievance was untimely. When prison officials fail to enforce their own procedural requirements and opt to consider otherwise defaulted claims on the merits, so will the court.

Plaintiff also argues that Lee was not required to name individual defendants in her grievance prior to filing suit. According to plaintiff, Ohio's grievance procedure

6

only requires an inmate to provide individual names if the inmate is aware of the persons involved. In *Jones v. Bock*, 549 U.S. 199, 219 (2007), the Supreme Court concluded "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." The primary purpose of the grievance process is to alert prison officials to a problem rather than to provide notice to a particular official that he may be sued. Lee maintains that she was not aware that Dr. Eddy was responsible for the ongoing deprivation of estrogen hormone therapy when she filed her grievances. The purpose of the PLRA exhaustion requirement is to allow a prison to address complaints about the program it administers before being subjected to suit. Plaintiff maintains that Dr. Eddy was given fair notice of Lee's complaints. The final grievance decision indicated that Dr. Eddy was copied on the decision. Plaintiff contends that Dr. Eddy was aware of her complaints and chose not to address them.

Plaintiff maintains that there are genuine issues of material fact in dispute precluding summary judgment on the issue of exhaustion. In the alternative, plaintiff maintains that the Court should defer ruling on Dr. Eddy's motion until discovery is completed on this issue. Finally, plaintiff contends that her case should not be dismissed with prejudice.

### C. Defendant Dr. Eddy's Reply in Support

Defendant argues that because plaintiff's complaint was rejected as untimely, it did not exhaust her administrative remedies. According to defendant, Lee's complaint concerned a discrete act–Dr. Eddy allegedly discontinued her hormonal

treatment–rather than an ongoing medical condition making it immediately grievable. Dr. Eddy's discontinuation of the prescription of estrogen did not require the passage of time or the aggregation of events before becoming grievable.

Defendant also argues that because plaintiff's complaint was rejected as untimely, and alternatively on the merits, it did not exhaust her administrative remedies. Here, the prison officials enforced their own procedural rules unlike the cases upon which plaintiff relies.

Defendants contend that plaintiff's complaint failed to comply with Ohio's requirement of specificity. Plaintiff incorrectly argues that Ohio's inmate grievance procedure only "advises," rather than requires inmates to provide the names of the personnel involved. Defendants argue that plaintiff cites no authority supporting her assertion that the procedure only requires an inmate to provide the individual name if the inmate is aware of the persons involved. Defendants argue that this Court has dismissed claims against defendants who were not named or referenced in an inmate's grievance for failure to comply with the PLRA's exhaustion requirements. Dr. Eddy was not named in any complaint, nor did Lee include any description of Dr. Eddy or his title or position. Plaintiff did not even file a John/Jane Doe complaint. Defendant maintains that the *Jones* Court found that the level of detail necessary in a grievance depends on the state's procedure. Defendant argues that Ohio's inmate grievance procedure requires specific details including the names of personnel involved. Because plaintiff

8

failed to meet this standard, he did not comply with the procedural rules as required by the PLRA.

Dr. Eddy maintains that he was not provided with "fair notice" of the claim against him. Although Inspector Parks copied Dr. Eddy on her decision "for informational purposes," it is the prisoner who must give prison officials fair notice of the alleged mistreatment. Plaintiff was not relieved of this burden based on Inspector Parks copying other prison officials on her decision. Defendant argues that the general assertions in Lee's complaint cannot be reasonably construed to have put him on notice that Lee would claim he is responsible for Lee not receiving hormonal treatment.

Defendant further argues that no additional discovery is necessary for the Court to rule on his motion for summary judgment because he has attached plaintiff's entire grievance file from the time of his present incarceration to the filing of her complaint.

## II. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine

9

dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

### III. Discussion

Under 42 U.S.C. §1997e(a), a prisoner challenging "prison conditions" under §1983 must first exhaust his administrative remedies. This exhaustion requirement applies to "all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). Ohio provides an inmate grievance procedure by which inmate grievances are investigated and resolved by an inspector of institutional services. Ohio Admin. Code §5120-9-31(H). It is a three step process: (1) the prisoner must first file an informal complaint within 14 days of the event giving rise to the claim, the complaint must be filed with the director or department most directly responsible for the event; (2) 14 days after a response to an informal complaint or waiver by the responsible prison officials, the inmate may, if he so chooses, file a notification of grievance with the inspector of institutional services to which the inspector will respond; and (3) in the final step, within 14 days of the inspector's response to the inmate's notification of grievance determination, "if the inmate is dissatisfied with the disposition of [his] grievance, [he] may request an appeal from the inspector of institutional services." O.A.C. 5120-9-31(J). Furthermore, the ODRC provides all the proper forms necessary to follow this administrative procedure. *Id.* Only after these three steps have been taken, has an inmate exhausted his administrative remedies.

To satisfy the exhaustion requirement, a prisoner must timely file a grievance. Failing to file a grievance by the deadlines established in Ohio Admin. Code §5120-9-

31(H) bars a prisoner from filing a § 1983 claim. *Woodford v. Ngo,* 548 U.S. 81, 83 (2006); *Scott v. Ambani,* 577 F.3d 642, 647 (6th Cir. 2009).

Further, just filing a timely initial grievance is not enough to exhaust remedies under §1997e(a). The exhaustion requirement means that *all* administrative remedies must be exhausted. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001). If the grievance is denied initially, the prisoner must, within the time frame required by the administrative regulations, proceed on to the next step of the prison grievance procedure. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). An Ohio prisoner using the grievance remedies available under O.A.C. §5120-9-31 must, within five working days of the disposition of his grievance, appeal to the Chief Inspector. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); O.A.C. §5120-9-31(H)(8). If he fails to do so, the prisoner has not exhausted his prison administrative remedies as required by §1997e(a).  *Freeman*, 196 F.3d at 645.

Defendants argue that plaintiff's complaint was not timely filed. Under circumstances where an inmate alleges an ongoing failure to treat a medical condition, courts have concluded that a grievance may be timely even if the time for doing so has lapsed after the first instance that the inmates request for medical care had been refused:

> For an acute medical condition, like a heart attack or a diabetic coma, the time of the failure to treat (and therefore the time of the Eighth Amendment violation) can be determined with some precision, and therefore the time limit for filing a grievance can be readily established. Such is not the case for a chronic medical condition that is ignored, or for which treatment is delayed or inadequate. The seriousness of a chronic condition may not become obvious to prison officials until some time

12

> passes, and the indifference to that condition-and the resulting pain suffered by the prisoner that equates to the infliction of punishment-may not become manifest until then as well. Such a condition is properly identified as "ongoing," and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it.

*Ellis v. Vadlamudi*, 568 F. Supp. 2d 778, 783 -784 (E.D. Mich.,2008). Here, plaintiff contends that she was under the belief that prison staff were attempting to have her hormone therapy reinstated. Only after the passage of several months did plaintiff recognize that her medication would not be reinstated. At that point, Lee filed her informal complaint. Because she had continued to be denied hormone therapy for an ongoing condition, I conclude that her complaint was timely.

    Dr. Eddy's assertion that he did not receive "fair notice" of plaintiff Lee's complaints because he was not named in her grievance is also without merit. Section 5120-9-31(K) of the Ohio Administrative Code states that "[i]nformal complaints and grievances must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved . . . ." In her August 9, 2012 Informal Complaint Resolution, plaintiff wrote:

> Briefly I am a transgender inmate with breast who have been taking hormone medication since I was 18 years old. My complaint is I was receiving estrogen when I arrived in the D.O.C. and at C.R.C. Now I am not receiving my hormone medication. I have spoke to mental health and sent Mr. Eller who is the supervisor of medical a kite per D.O.C. policy. A inmate who enter the D.O.C. on estrogen should still receive it. I am a transsexual with breast implants.

13

Doc. 24-5 at PageID 272. In response, plaintiff was told "[m]edical and medications are handled by our physician/Doctor. This will need resolved by medical for your first complaint." *Id.*

Plaintiff's August 15, 2012 Notification of Grievance stated "per D.O.C. policy any inmate who enters the D.O.C. on estrogen shouldn't be cut off. Since arriving at Belmont I haven't received my estrogen." Doc. 24-6 at PageID 273. The August 31, 2012 Disposition of Grievance completed by Kelly S. Riehle stated:

> Per 68-MED-01:3. Hormone therapy for the purpose of gender change will not be initiated while the inmate is incarcerated.
> 4. Hormone therapy prescribed for inmates in preparation for gender change surgery or for the purpose of gender modification will be evaluated and requires authorization by joint consultation between the institutional Chief Medical Office, the highest level mental health prescriber at the institution, the State Medical Director, and the Bureau of Mental Health Services Director of Clinical Services.
> 5. The institutional Chief Medical Officer, in consultation with the highest level mental health prescriber at the institution, the State Medical Director, and the Bureau of Mental Health Services Director of Clinical Services will evaluate any individual with definitive sexual gender surgery done prior to incarceration to determine the need for continuation of hormonal therapy on a case-by-case basis. Factors that will be considered in determining the need of such therapy may include:
> a. Length of sentence;
> b. Psychiatric profile; and
> c. Associated medical conditions.
> 7. Inmates with gender confusion will have access to mental health services and should be encouraged to seek such counseling.
> Per your medical file you did not meet the criteria for hormone therapy and it was discontinued prior to you coming to BeCI.

Doc. 24-8 at PageID 275. On September 12, 2012, plaintiff filed an Appeal to the Chief Inspector, stating:

> I was receiving estrogen in CRC and in the county jail, please note my hormone therapy was discontinued which is against D.O.C. policy. The inspector Kelly S. Riehle isn't for the right thing and didn't properly investigate my claim because if she would have reviewed my medical charts she would see in 2009/2010 I received estrogen hormone therapy while I was in London Correctional Institution. . . .

Doc. 24-9 at PageID 278. The November 10, 2012 Decision of the Chief Inspector on a Grievance Appeal stated:

> My investigation of your Appeal included review of the above information. I also reviewed the FMC MOSS database that provides the details of dates for any scheduled medical trips to FMC and OSU hospitals. It also provides the results of lab work or testing ordered by physicians and schedule for chronic care clinic appointments. In addition, I reviewed your electronic health records, copies of your medical file provided by the HCA at your facility and commissary records. I find that you are being followed in CCC related to pulmonary concerns; last being seen on 5-31-12. Your complaint about Estrogen is something that was discontinued prior to your arrival at BECI. It expired on 2-12-12 and you transferred to BECI on 3-9-12. On your arrival to ODRC a PA was sent for authorization of the estrogen order, which wasn't continued, thus, this part of your grievance is extremely outside the time constraints. (You filed an ICR at CRC-03-12-000016. From that ICR there is a note that "Dr. Shamin & Dr. Farooqui (MH) conducted assessments & you did not meet the criteria for Trans Gender Identity Disorder. Dr. Eddy, State Chief Medical Officer denied hormonal treatment.") . . .
>
> My response, after review of the above information, is that the medical staff at your facility is giving you the proper care within the ODRC guidelines.

Doc. 24-11 at PageID 284.

Beginning with plaintiff's informal complaint, any review of plaintiff's grievance forms would have alerted Dr. Eddy that his conclusion that Lee did not meet the criteria for receiving hormone therapy was the subject of Lee's grievance. Defendant was

15

provided ample opportunity to address plaintiff's complaint if he chose to do so. As a result, I conclude that plaintiff properly exhausted his administrative remedies.

### IV. Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS defendant Dr. Eddy's October 23, 2013 first motion for summary judgment (doc. 24) be DENIED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/Mark R. Abel  
United States Magistrate Judge
