IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTIONE S. LEE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 2:13-CV-87 |
| v. | : | |
| | : | |
| DR. EDDY, | : | JUDGE ALGENON L. MARBLEY |
| | : | Magistrate Judge Abel |
| Defendant. | : | |
| | : | |

## ORDER

## I. INTRODUCTION

This matter is before the Court of Defendant's Objection (Doc. 38) to the Magistrate Judge's Report and Recommendation (Doc. 37), recommending that the Court deny Defendant's Motion for Summary Judgment (Doc. 24).  For the reasons stated below, the Court **OVERRULES** Defendant's Objection and **ADOPTS** the Report and Recommendation in its entirety.  Defendant's Motion for Summary Judgment is, therefore, **DENIED**.

## II. BACKGROUND

*A. Factual Background*

Plaintiff, Antione "Whitney" Lee, is an inmate who has been incarcerated in the Ohio Department of Rehabilitation and Correction ("ODRC") since January 30, 2012.  Lee suffers from gender dysphoria[1], a medical disorder defined as "[a] marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months duration."  American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* § 302.85 (5th ed. 2013).

---

[1] Here, Lee's condition is described as gender dysphoria, but may also be referred to in other filings as "gender identity disorder," or "GID."

1

Gender dysphoria "is associated with significant distress or impairment in social, occupational, or other important areas of functioning." *Id*. Hormone therapy is an established treatment for gender dysphoria.

Lee, though biologically male, considers herself to be female. She has been dressing and grooming herself as a woman since she was a teenager, and began living as a woman at age 18. Lee started receiving hormone therapy in 1997, but the treatment was disrupted by her incarceration. In 1999, Lee restarted treatment, and received it consistently for the next 13 years, including during periods of incarceration. During Lee's detentions at federal and state facilities spanning 2005 to 2012, she received estrogen hormone therapy. The hormone therapy resulted in various changes for Lee, including her skin and voice softening, developing breasts, and becoming unable to grow facial hair or have an erection. The physical changes allowed Lee to look like a woman, which she felt was her correct gender.

In January 2012, Lee entered ODRC, and, under the supervision of the medical personnel at the ODRC Correctional Reception Center, continued undergoing hormone therapy at the same dosage she received prior to incarceration. At the alleged direction of ODRC's medical director, Dr. Andrew Eddy, Lee's hormone therapy was discontinued in February 2012. The abrupt withdrawal resulted in physical and emotional changes for Lee, including loss of breast tissue, voice deepening, coarse skin, facial hair growth, experiencing erections, irritability and anger, depression and feelings of hopelessness. When Lee brought her Motion for a Temporary Restraining Order (Doc. 44), she was taking anti-depressants; according to her medical history, she has contemplated suicide and was placed on suicide watch in 2013.

Lee filed two informal complaints in February 2012 regarding the discontinuation of her hormone therapy: one with the mental health department; and, one with the medical department.

On March 12, 2012, Lee was transferred to Belmont Correctional Institution ("BeCI"). Prior to her transfer, Lee did not receive responses to either informal complaint. She was also unable to identify the prison staff responsible for discontinuing her hormone therapy. Upon arrival at BeCI, Lee submitted requests and met with medical staff about her hormone therapy, and was advised that the staff was working to reinstate her medication. On August 9, 2012, Lee filed an informal complaint requesting that she receive hormone therapy, and on August 15, 2012, she received a response that medical issues and medications were handled by the doctor and that the issue would need to "be resolved by medical for your first complaint." (Doc. 24-5). On August 15, 2012, Lee filed a "Notification of Grievance" requesting hormone therapy, and on November 31, 2012, received a "Disposition of Grievance" stating that she did not meet the criteria for hormone therapy, which had been discontinued prior to her transfer to BeCI. During that time, Lee filed an "Appeal to the Chief Inspector" on September 12, 2012, asking for estrogen therapy. On November 10, 2012, Chief Inspector Mona Parks issued a decision finding Lee's grievance untimely, and stating that the prison medical staff was providing her with proper care pursuant to the ODRC guidelines.

*B. Procedural History*

On January 11, 2013, Ms. Lee filed a motion for leave to proceed *in forma pauperis*. (Doc. 1). On August 12, 2013, this Court adopted a Report and Recommendation that dismissed Defendant Eller from the case. (Doc. 19). Plaintiff obtained counsel on September 26, 2013. (Doc. 22). On October 23, 2013, Defendant Eddy filed a Motion for Summary Judgment. (Doc. 24). The basis of Defendant's Motion is that the case should be dismissed pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a) ("PLRA"), which requires a prisoner properly to

3

exhaust all available administrative remedies prior to filing an action in federal court challenging her conditions of confinement.

On February 12, 2014, Magistrate Judge Abel issued a Report and Recommendation recommending that Defendant Eddy's Motion for Summary Judgment be denied. (Doc. 37). Defendant Eddy has since objected to the R&R (Doc. 38), and Plaintiff has filed a response to the objection (Doc. 42). Additionally, Plaintiff filed a Motion for a Temporary Restraining Order or Preliminary Injunction on April 1, 2014 (Doc. 44), which this Court subsequently granted (Doc. 46). Following a two-day hearing, this Court orally granted Plaintiff's request for a preliminary injunction, ordering that she be administered the proper hormone therapy.

The Court shall address the outstanding Report and Recommendation herein.

### III. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*.

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish one of the elements of a claim and would affect the application of governing law to the rights of the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis, Wyo.*, 542 P.2d 867, 872 (1975)).

A movant for summary judgment meets its initial burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Dixon v. Anderson*, 928 F.2d 212, 216 n. 5 (6th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986)). At that point, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Id*. (quoting Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). It is not, however, the role of the trial court to "resolve factual disputes by weighing conflicting evidence because it is the jury's role to assess the probative value of the evidence." *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 230 (6th Cir. 1990) (citing *Stone v. William Beaumont Hosp.,* 782 F.2d 609, 615 n. 5 (6th Cir. 1986); *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980)). All evidence and reasonable inferences must be viewed in the light most favorable to the party opposing the motion. *Pucci*, 628 F.3d at 759 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## IV. LAW & ANALYSIS

### A. Report and Recommendation

Defendant's Motion for Summary Judgment sets forth three arguments as to how Plaintiff allegedly failed to exhaust her available remedies: "1) Plaintiff's grievance concerning hormonal treatment was untimely, and the Office of the Chief Inspector clearly notified Plaintiff of this procedural failing when rejecting [her] appeal; 2) Plaintiff's grievance failed to comply with Ohio's specificity requirement against Dr. Eddy because Plaintiff named only Correctional Officer Ross and Unit Manager Eberlin in [her] grievance; and 3) Plaintiff's grievance failed to provide Dr. Eddy with 'fair notice' of [her] allegations." (Doc. 38 at 2; *see also* Doc. 24 at 4-5).

Relying on *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008), the Magistrate Judge found that Plaintiff's complaint was timely filed, because she filed it only after recognizing that her hormone therapy would not be reinstated, and the hormone therapy was being used to treat an ongoing condition. The Magistrate Judge further found that Defendant's argument that he did not receive fair notice of Plaintiff's complaints because he was not named in her grievance was without merit. According to the Magistrate Judge

> Beginning with plaintiff's informal complaint, any review of plaintiff's grievance forms would have alerted Dr. Eddy that his conclusion that Lee did not meet the criteria for receiving hormone therapy was the subject of Lee's grievance. Defendant was provided ample opportunity to address plaintiff's complaint if he chose to do so. As a result, I conclude that plaintiff's properly exhausted [her] administrative remedies.

(Doc. 37 at 15-16).

In his Objection, Defendant first argues that, because Plaintiff's informal complaint concerning hormonal treatment was rejected by the Assistant Chief Inspector as untimely, Plaintiff did not exhaust all available administrative remedies. According to Defendant, the Magistrate Judge erred in applying *Ellis* to the case *sub judice*. Defendant insists that Plaintiff alleged a discrete act—Dr. Eddy's discontinuation of hormone therapy—to which *Ellis* is inapplicable. As such, Plaintiff's failure to timely grieve that discrete act shows that she did not exhaust her administrative remedies.

Plaintiff counters that *Ellis* is applicable here. Plaintiff proffers that, as the Magistrate Judge correctly stated, she filed her informal complaint after realizing that her medication would not be reinstated. In the months without hormone therapy, Plaintiff underwent various physical changes, which directly affected her mental health. Plaintiff asserts that such changes, both

6

physical and mental, demonstrate that her gender dysphoria is an ongoing medical condition, thus making the Magistrate Judge's application of *Ellis* proper.

     This Court agrees with the Magistrate Judge's analysis pursuant to the exhaustion requirement, and supports the application of *Ellis* to the case at bar.  The *Ellis* Court found that "a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it." 568 F. Supp. 2d at 783-84.  *Ellis* concerned an "ongoing medical condition and the claim that the state stood by and did nothing in the face of that ongoing condition." *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011) (citing *Ellis*, 568 F. Supp. 2d at 783-85).  *Ellis* is distinguishable from cases in which there is "one discrete harm-causing act." *Id*.  Here, Lee suffers from gender dysphoria, an ongoing medical condition.  While the discontinuation of hormone therapy was an individual event, the continued lack of care for her physical and mental health needs demonstrates Defendant's neglect to remedy or attempt to remedy an ongoing medical condition.  Thus, the Magistrate Judge's application of *Ellis*, and his conclusion regarding exhaustion, was proper.

     Defendant next asserts that the Magistrate Judge did not address his specificity argument. Defendant claims that the Report and Recommendation contains a discussion of exhaustion and fair notice, but nothing about Plaintiff's alleged failure to comply with Ohio's specificity requirement.  While fair notice and specificity are similar, but distinct legal issues, Defendant insists that they must be addressed individually, which the Magistrate Judge allegedly neglected to do.  Moreover, Defendant claims that the Magistrate Judge's legal conclusions regarding the timeliness of Plaintiff's grievance and the issue of "fair notice" are both contrary to law.

     Plaintiff argues that specificity and fair notice are indistinguishable, particularly given the case law, and that the Magistrate Judge addressed both issues simultaneously.  Plaintiff contends

7

that she met both the specificity and fair notice requirements.  Regarding specificity, Plaintiff notes that Defendant conceded that inmates are permitted to file grievances concerning a John or Jane Doe if the individual's name is unknown (*see* Doc. 24 at 6), which is essentially what Plaintiff did.  Plaintiff has further stated that she did not know Dr. Eddy was behind the decision to withdraw her hormone therapy at the time she filed her grievances.  Turning to fair notice, Plaintiff asserts that the Magistrate Judge accurately determined that Plaintiff's grievances contained a sufficient amount of information to provide Defendant fair notice that he was a subject of her claim.  Plaintiff argues that Defendant's silence during the grievance process should not absolve him of liability.

The Court agrees with the Magistrate Judge's findings on the grounds of specificity and fair notice.  The statutory exhaustion requirement incorporates the rules and regulations which the State has made a part of its grievance system; that is, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules...." *Woodford v. Ngo,* 548 U.S. 81, 90, (2006).  Ordinarily, a claim against a particular corrections official is not properly exhausted if that official is not named in the grievance.  *See Hall v. Warren,* 443 Fed. Appx. 99, 106 (6th Cir. 2011), *citing, inter alia, Jones v. Bock,* 549 U.S. 199, 218–19 (2007). Here, however, the Magistrate Judge found that, based on Plaintiff's written complaints, any review of the grievance forms would have informed Dr. Eddy that he was the subject of Lee's grievance.  (*See* Doc. 37 at 15).  Plaintiff filed her grievance once she realized that her hormone therapy would not be reinstated, and went through a few rounds of grievance procedures before receiving a final rejection to her request.

This Court refuses to dismiss her claim simply because she did not specifically name Dr. Eddy in her complaint.  In *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-326 (6th Cir. 2010), the

8

Court refused to dismiss a prisoner's claim for failure to exhaust administrative remedies even though the prisoner had not stated each name of the individual parties involved as required by the prison's grievance procedures.  Moreover, the Court found that the prisoner properly exhausted his claim "because he invoked one complete round of the Department's grievance procedures and received merits-based responses at each step."   As the Magistrate Judge noted, the record shows that Plaintiff filed grievances that included as much information as Plaintiff knew.  As such, the Magistrate Judge's analysis regarding fair notice and specificity was a complete and proper application of law, rather than contrary to law as Defendant suggests.

*B. Summary Judgment*

Pursuant to the PLRA, before a prisoner may bring a case in this Court, he must exhaust his administrative remedies.  42 U.S.C. § 1997e(a).  This exhaustion requirement applies to "all prisoners seeking redress for prison circumstances or occurrences."  *Porter v. Nussle,* 534 U.S. 516, 520 (2002); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  The Ohio Administrative Code sets forth the procedures for exhausting administrative remedies.  O.A.C. 5120-9-31.  It is a three step process: (1) the prisoner must first file an informal complaint with the director or department most directly responsible for the event giving rise to the claim within 14 days of the event; (2) 14 days after a response to an informal complaint or waiver by the responsible prison officials the inmate may file a notification of grievance with the inspector of institutional services to which the inspector will respond; and (3) in the final step, within 14 days of the inspector's response to the inmate's notification of grievance determination, "if the inmate is dissatisfied with the disposition of [his] grievance, [he] may request an appeal from the inspector of institutional services."  O.A.C. 5120-9-31(K).  Furthermore, the ODRC

provides all the proper forms necessary to follow this administrative procedure. *Id.* Only after these three steps have been taken, has an inmate exhausted his administrative remedies.

The Ohio Administrative Code does provide a limited waiver of these procedural requirements when the inspector of institutional services determines that there is a substantial risk of physical injury to the grievant. *See* O.A.C. 5120-9-31(K). Otherwise, the inmate must exhaust all of the claims against all of the defendants identified in his or her complaint.

In order for the prisoner successfully to plead her claim in district court and to satisfy the exhaustion requirement, she must plead her

> claims with specificity and show that [the claims] have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or in the absence of written documentation [the inmate must] describe with specificity [in his complaint] the administrative proceedings and its outcome.

*Knuckles El v. Toombs,* 215 F.3d 640, 642 (6th Cir. 2000). Exhaustion under the PLRA requires that a prisoner comply with all procedural rules, including filing deadline, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Booth v. Churner*, 532 U.S. 731 (2001). Under section 1997e(a), however, prisoners are only required to exhaust those remedies that are "available." The Sixth Circuit has held that the grievance procedures may become unavailable when prison officials have thwarted the inmate's attempts at exhaustion. *Brock v. Kenton County,* 93 F. App'x 793, 798 (6th Cir.2004).

As this Court set forth *supra*, section IV.A., Plaintiff has properly exhausted her administrative remedies, and timely filed her complaint. Even if the Court did not agree with the Magistrate Judge's analysis, it would still find that Defendant's Motion for Summary Judgment must be denied. At the Rule 65.1 Hearing, held pursuant to Plaintiff's Motion for a Temporary

Restraining Order (Doc. 44), the Court addressed the issue *sub judice*, determining that Plaintiff exhausted her administrative remedies and timely filed her Complaint:

> The fact is that Ms. Lee, proceeding pro se, filed a complaint pro se in January '13 after engaging the ODRC processes to greive, as best the Court can tell, from the time that the hormone therapy was discontinued until present. As counsel noted, at each institution, she has requested the [hormone] therapy and sought the [hormone] therapy…. [I]n this circumstance [] we are dealing with an inmate who doesn't have the same degree of access [as a business person in a commercial case], who may not be as lettered in the law as somebody who is either counsel or someone who has the aid of counsel. This lady took steps to redress her grievance at each phase. And so under those circumstances, the Court finds that she has satisfied the immediacy requirement under 65(b)(1)(A)[.]

(*65.1 Hearing Transcript*, Doc. 55 at 28-29). The Court's earlier finding of exhaustion is supported not only by consideration of the record and the parties' arguments, but by the continuation of the litigation in this matter. On May 2, 2014, the Court issued a Preliminary Injunction ordering that the ODRC continue to provide Plaintiff her hormone therapy.

This Court agrees with the Magistrate Judge's Report and Recommendation, and finds that Plaintiff exhausted her administrative remedies and timely filed her Complaint. Thus, Defendant's Motion for Summary Judgment is **DENIED**.

## V. CONCLUSION

Pursuant to 28 U.S.C. § 636(b)(1), this Court conducted a de novo review of the Magistrate Judge's Report and Recommendation. After careful review of the record, this Court is unpersuaded by Defendant's arguments. For the foregoing reasons, and for the reasons detailed in the Magistrate Judge's Report and Recommendation, the Court **OVERRULES** Defendant's Objections (Doc. 38). The Report and Recommendation (Doc. 37) is **ADOPTED**

and **AFFIRMED**.  Accordingly, Defendant's Motion for Summary Judgment (Doc. 24) is **DENIED**.

      **IT IS SO ORDERED.**

                                                   **s/Algenon L. Marbley**
                                                   **Algenon L. Marbley**
                                                   **United States District Court Judge**

**DATE: September 29, 2014**