IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ANTIONE S. LEE** | : | |
| | : | Case No. 2:13-cv-87 |
| **Plaintiff,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Abel |
| **BRAD ELLER, et. al,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiff's Amended Motion for Attorney's Fees. (Doc. 80). Plaintiff seeks fees related to the preliminary injunction ordered by the Court on May 2, 2014. *Id.* In particular, Plaintiff's attorney's fees stem from preparation of the temporary restraining order, engagement in discovery, and attendance at a day-and-a-half long preliminary injunction hearing. *Id.* at 6. For the reasons set forth herein, Plaintiff's Motion is **GRANTED**.

### I.  BACKGROUND

Plaintiff Antione "Whitney" Lee is a prisoner at the Ohio Department of Rehabilitation and Correction ("ODRC"). (Doc. 100 at 1). Plaintiff suffers from gender dysphoria,[1] a medical disorder defined as "[a] marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months duration." *Id.* (citing American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* § 302.85 (5th ed. 2013). Plaintiff is biologically male, but considers herself to be female. *Id.* at 2. She started receiving hormone therapy in 1997, but the treatment was interrupted by incarceration. *Id.* In 1999, Plaintiff restarted and received treatment consistently for the next 13 years, including during periods of

---

[1] Here, Lee's condition is described as gender dysphoria, but may also be referred to in other findings as "gender identity disorder," or "GID."

incarceration. *Id.* During Plaintiff's time in federal and state incarceration facilities, spanning a timeframe from 2005 to 2012, she received estrogen hormone therapy. *Id.*

In January 2012, Plaintiff entered ODRC and continued undergoing hormone therapy at the same dosage she received prior to incarceration. *Id.* At the alleged discretion of ODRC's medical director, Dr. Andrew Eddy, Plaintiff's hormone therapy was discontinued in February 2012. Plaintiff filed two informal complaints, but received no responses. *Id.* at 2-3. Plaintiff was transferred to Belmont Correctional Institution ("BCI") in March 2012, and was advised that the staff was working to reinstate her medication. *Id.* at 3. She filed both an informal complaint and a "Notification of Grievance" requesting hormone therapy. *Id.* She received a "Disposition of Grievance" stating that she did not meet the criteria for hormone therapy. *Id.* In September 2012, Plaintiff filed an "Appeal to the Chief Inspector," which was ruled untimely, and the Chief Inspector noted that the prison medical staff was providing her with proper care. *Id.*

## II.     PROCEDURAL HISTORY

On January 11, 2013, Ms. Lee filed a motion for leave to proceed *in forma pauperis* in federal court. (Doc. 1). On January 30, 2013, Plaintiff filed a complaint in this Court alleging violation of prisoner civil rights under 42 U.S.C. § 1983. On August 12, 2013, this Court adopted a Report and Recommendation that dismissed Defendant Eller from the case. (Doc. 19). Plaintiff obtained counsel on September 26, 2013. (Doc. 22). On October 23, 2013, Defendant Eddy filed a Motion for Summary Judgment. (Doc.24). This Court adopted the Magistrate Judge's Report and Recommendation (Doc. 37) and denied the motion for summary judgment. (Doc. 100).

Additionally, Plaintiff filed a Motion for a Temporary Restraining Order or Preliminary Injunction on April 1, 2014, seeking estrogen hormone treatment for her gender dysphoria.

(Doc. 44).  This Court subsequently granted a temporary restraining order (Doc. 46).  Following discovery, depositions, and a two-day hearing on May 2, 2014, this Court orally granted Plaintiff's request for a preliminary injunction, ordering that she be administered the proper hormone therapy.  (*See* Doc. 76 at 94).

On June 17, 2014, Plaintiff filed an Amended Motion for Attorney's Fees (Doc. 80).  On July 11, 2014, Defendant Eddy filed his Response in Opposition to Plaintiff's Amended Motion for Attorney's Fees (Doc. 85).  On August 1, 2014, Plaintiff filed her Reply to Defendant's Response in Opposition to Plaintiff's Amended Motion for Attorney's Fees. (Doc. 91).  This matter has been fully briefed and is ripe for review.

### III.     STANDARD OF REVIEW

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b), permits a court to award reasonable attorney fees to the "prevailing party" in a civil rights action brought under 42 U.S.C. § 1983.  To calculate attorney's fees under § 1988, courts customarily apply the "lodestar" formula, a determination of the number of hours reasonably expended multiplied by a reasonable hourly rate.  *See, e.g.*, *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *Morrison v. Davis,* 88 F. Supp. 2d 799, 801-02 (6th Cir. 2000).

The Prisoner Litigation Reform Act ("PLRA") limits an award of attorney's fees "in any action  brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under [42 U.S.C. § 1988]."  42 U.S.C. § 1997e(d)(1); *see also King v. Gowdy*, 268 F. App'x 389, 389) (6th Cir. 2008) (applying § 1997e(d) to a prisoner civil rights case brought under 42 U.S.C. § 1983).  Thus, once the Court determines the reasonable amount of fees that should be awarded to the prevailing party, the Court must ensure that the award comports with the PLRA.  *See, e.g.*, *Glover v. Johnson,* 138 F.3d 229 (6th Cir.

1998) (considering the PLRA in conjunction with § 1988). The PLRA allows an award of attorney's fees in a § 1983 claim brought by a prisoner only to the extent that the fee "was directly and reasonably incurred in proving an actual violation of the plaintiff's rights. . . and the amount of the fee is proportionately related to the court ordered relief for the violation; or the fee was directly and reasonably incurred in enforcing the relief ordered for the violation." § 1997e(d)(1)(A). Additionally, no fee awarded "shall be based on an hourly rate greater than 150 percent of the hourly rate established under [18 U.S.C. § 3006A] for payment of court-appointed counsel." § 1997e(d)(3). Moreover, no attorney fee award should exceed 150 percent of the monetary judgment awarded in the case. § 1997e(d)(2).

## IV.     ANALYSIS

Defendant Eddy does not dispute that Plaintiff was the prevailing party in the preliminary injunction matter. (Doc. 85). He does, however, dispute the rate calculation for each of the attorneys based on their experience. *Id.* at 2-3. He also disputes the failure to distinguish different rates for in-court and out-of-court time. *Id.* at 3-5. Finally, Defendant Eddy disputes the proportionality of the requested award and the court-ordered relief. *Id.* at 5-6.

To determine the amount of attorney's fees, if any, Plaintiff should be awarded, this court must take a step-by-step approach. First, this Court must determine if Plaintiff is a prevailing party under § 1988. *See* 42 U.S.C. § 1997e(d)(1). Second, this Court must calculate the total fee award using the lodestar method. *See id.* Third, this Court must determine, under the PLRA, whether the fee is proportionate to the court-ordered relief for the violation, or if the fee was directly and reasonably incurred in enforcing the relief ordered for the violation. *See* 42 U.S.C. § 1997e(d)(1)(B).

**A. Prevailing Party**

In order to be considered a "prevailing party," a litigant must secure an enduring, irrevocable, court-ordered change in the legal relationship between the parties. *McQueary v. Conway*, 614 F.3d 591, 596 (6th Cir. 2010) (citing *Sole v. Wyner*, 551 U.S. 74, 86 (2007)). Put differently, "[a] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

The Sixth Circuit held that awarding attorney's fees at the preliminary injunction stage is a "contextual and case-specific inquiry" and the court could not say "that preliminary-injunction winners always are, or never are, 'prevailing parties.'" *McQueary,* 614 F.3d at 601. District courts have since awarded attorney's fees in civil rights cases based on a preliminary injunction award where the party seeking fees obtained relief on significant issues and received a direct benefit from the opposing party as a result of the court order. *See Kelly v. Corrigan*, 890 F. Supp 2d, 778, 782-84 (E.D. Mich. 2012); Gamble v. Ohio Dep't of Job and Family Servs., No. 1-03-cv-452, 2007 WL 3046492, at *4 (S.D. Ohio 2007) (distinguishing the case from *Sole*); *see also Jones v. Michigan Dept. of Corr.*, No. 05-72817, 2011 WL 3268087, at *2 (E.D. Mich. 2011) (refusing to find Plaintiff as the prevailing party because prison officials the voluntarily rescinded the policy at issue and because prison officials still confiscated his mail pursuant to other rules, so the plaintiff did not directly benefit from the rescindment).

Defendant does not dispute that Plaintiff is a "prevailing party" under § 1988. The Court notes that the preliminary injunction awarded on May 2, 2014 materially altered the legal relationship between the parties and resulted in a direct benefit to the Plaintiff because she now receives hormone therapy. The parties engaged in discovery, attended depositions, and

5

participated in a two-day preliminary injunction hearing. Thus, Plaintiff is a prevailing party at this stage in the litigation, so reasonable attorney's fees may be awarded to her.

### B. Lodestar Calculation

The traditional "starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). The party seeking an award of fees must "submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). If the party seeking attorney's fees "has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens Counsel for Clean Air*, 478 U.S. 546, 564 (1986); *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (The lodestar usually carries a "strong presumption" that is represents a reasonable fee). A "reasonable fee" is one which is "adequate to attract competent counsel, but does not produce a windfall to attorneys." *Hunter v. Hamilton Cnty. Bd. of Elections*, No. 1:10-CV-820, 2013 WL 5467751, at*14 (S.D. Ohio Sept. 30, 2013) (citing *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007)).

Plaintiff's attorneys claim 223 hours at a rate of $211.50 per hour, for a total of $47,164.50 in attorney's fees sought.

#### 1. Hours Reasonably Expended

The Supreme Court held that attorney's fees awarded should relate to the work "expended in pursuit of the ultimate result achieved" and not work on unrelated claims. *Hensley*

*v. Eckerhart*, 461 U.S. 424, 435 (1983). The PLRA further requires the attorney's fees requested to be "directly and reasonably incurred in proving an actual violation of the plaintiff's rights . . . ." 42 U.S.C. 1997e(d)(1)(A). The 6th Circuit applies these standards together in awarding attorney's fees under the PLRA. *Riley v. Kurtz*, 361 F.3d 906, 916 (6th Cir. 2004) (citing 42 U.S.C. § 1997e(d)(1)(A) ("To this court's mind, the 'related claim' limitation set out in *Hensley* has been incorporated into the fee limitation section of the PLRA. Although stated differently, this limitation on attorney's fees is like the limitation in the PLRA – attorney's fees are only available if 'the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights. . . .'").

In his Response, Defendant Eddy does not dispute the number of hours Plaintiff's attorneys spent working on the case. Attorneys David A. Singleton, Rickell Howard, and Ngozi V. Ndulue submitted declarations of their work on Plaintiff's case, each containing an exhibit with a time log describing the dates worked, the specific work performed, and the amount of time spent on each activity. These records are sufficiently documented and this Court does not find the amount of time spent to be unreasonable.

Attorney David Singleton logged 17.1 total hours working on Plaintiff's case. These hours included attendance at temporary order and preliminary injunction hearings, meeting with Plaintiff, and attending depositions. (Doc. 80-1 at 4). Attorney Singleton also declared that he excluded a number of hours from his calculations, including attendance at additional depositions and travel time. *Id.* Additionally, Attorney Singleton billed fewer hours than Attorneys Howard and Ndulue, both having less experience and typically billing at a lower rate than Attorney Singleton.

7

Attorney Howard logged 58.1 hours: reviewing drafts of documents, attending depositions, traveling to hearings and the prison to visit Plaintiff, and attending temporary restraining order and preliminary injunction hearings. (Doc. 80-2 at 2). Attorney Howard also declared that she excluded a number of hours, including times when two attorneys were present on a client visit, defending a deposition, or meeting together. *Id*. Attorney Howard did not include informal meetings with her co-counsel and cut her billed travel time in half. *Id.*

Attorney Ndulue logged a total of 148.65 hours on Plaintiff's case, which includes legal research, telephone calls and emails, document and discovery preparation and reviews, attendance at temporary restraining order and preliminary injunction hearings, and travel time. (Doc. 80-3 at 4-7). Attorney Ndulue's declaration includes a statement that her time recorded is conservative and does not include all of her travel time or depositions with more than one attorney present. Attorney Ndulue amended her declaration when she discovered double-billed time. (*Id*). Moreover, Attorney Ndulue's time does not reflect time spent by Ohio Justice and Policy Center support staff on this case.

All of the time entries reflected by Plaintiff's attorneys relate to the temporary restraining order and preliminary injunction that Plaintiff obtained, as well as discovery necessary for the preliminary injunction hearing. (*See* Doc. 46). The Court finds this work directly related to proving a violation of Plaintiff's rights, in cooperation with the PLRA. The total of 223.85 hours spent on Plaintiff's case is reasonable, and Plaintiff's attorneys seek payment for 223 hours. Therefore, this Court will use 223 hours to calculate Plaintiff's attorney's fees.

2. <u>Reasonable Hourly Rate</u>

A reasonable hourly rate is typically "the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue

8

of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). The appropriate rate "is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Sykes v. Anderson*, 419 F. App'x 615, 618 (6th Cir. 2011) (quoting *Gonter*, 510 F.3d at 618).

The Court should look to "the fair market value of the services provided . . . the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." *Wells v. New Cherokee Corp.*, 58 F.3d 233, 239 (6th Cir. 1995). In determining the reasonable rate, the Court has the discretion to consider a party's submissions, awards in analogous cases, and its own knowledge and experience from handling similar requests for fees. *Project Vote v. Blackwell*, No. 1:06-CV-1628, 2009 WL 917737, at *5 (N.D. Ohio Mar. 31, 2009). Moreover, because "the determination of a reasonable rate is difficult given wide variations in lawyers' experience, skill and reputation," an attorney's "customary client billing rate is one reliable indicia of that attorney's prevailing market rate." *West v. AK Steel Corp. Ret. Acc. Pension Plan*, 657 F. Supp. 2d 914, 932 (S.D. Ohio 2009) (citing *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)).

The PLRA limits attorney's fees, however, to an hourly rate not greater than "150 percent of the hourly rate established under [18 U.S.C. 3006A] for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). This has been interpreted to mean that the hourly rate for the purposes of 42 U.S.C. § 1997e(d)(3) is the one established by the Judicial Conference under the authority granted to it by § 3006A, not the amount actually approved by Congress and implemented in the Criminal Justice Act. *Hadix v. Johnson*, 398 F.3d 863 (6th Cir. 2005).

The maximum hourly rate approved by the Judicial Conference is $141 per hour.[2] The maximum hourly rate awardable under the PLRA is therefore $211.50 (150% of $141). Defendant Eddy does not dispute the calculation of this number. Instead, he contends that all three attorneys should not be compensated at the same rate of $211.50 an hour, given the difference in years of experience among the three attorneys. (Doc. 85 at 2-3). Defendant Eddy cites *Randolph*, 2007 WL 2220407, as an example of an attorney with less experience receiving a lower award than the attorney with more experience. (Doc. 85 at 3). Defendant goes on to highlight that the Economics of Law Practice in Ohio publication shows a 10% difference in attorneys with 16-25 years of experience and attorneys with 6-10 years of experience. *Id.* Defendant contends that this Court should adjust the award accordingly, given that Attorneys Howard and Ndulue have less experience than Attorney Singleton.

Plaintiff asserts that this single rate is reasonable for all three attorneys, and cites to cases in which $275 per hour was found reasonable for a civil rights attorney with fifteen years of experience, and $200 per hour was found reasonable for a similar attorney with seven years of experience. *Citing Randolph v. Schubert*, Nos. 2:06-0050, 2:06-0058, 2007 WL 2220407 (M.D. Tenn. July 27, 2007)). Plaintiff initially offered figures from the 2010 Economics of Law Practice publication to support the reasonable rate for the award. (Doc. 80 at 5; Doc. 80-4). In Plaintiff's Reply, she cites to the 2013 version of this publication to show that the figures have, in fact, risen in Ohio. (Doc. 91 at 2).[3] Moreover, Plaintiff asserts that Attorneys Howard and

---

[2] Administrative Office of the U.S. Courts, Fiscal Year 2011 Congressional Budget Summary at ii, 7, *available at https://www.prisonlegalnews.org/media/publications/fy_2011_congressional_budget_summary.pdf*. The Sixth Circuit has previously relied on this number in calculating the maximum amount to be awarded. *See Hadix,* 398 F.2d at 865. The Court did not find more recently approved amounts, and Defendant Eddy did not dispute or provide controverting evidence in relation to this amount.

[3] The Court is unable to locate this particular publication, so it works on the basis of the 2010 edition.

Ndulue have extensive civil rights litigation experience, giving the Court more reason to award a fee higher than the median rate. *Id.* at 3.

Defendant Eddy's argument fails. Though under normal circumstances a difference in the award of attorney's fees may exist due to a difference in years of experience, this Court finds that such a consideration is inappropriate in this case where all three attorney's experienced a cap in fees due to the PLRA. Attorney Singleton, who has the most experience, was awarded an hourly rate of $275 as a reasonable attorney fee in 2009. *Mikalof v. Walsh,* No. 5:06-96, 2009 WL 901860, at *9 (N.D. Ohio March 30, 2009). Given that Attorney Singleton has been in practice for 23 years and that he has an extensive civil rights background, his hourly rate would likely be higher without the cap. *See Haddix v. Johnson*, 230 F.3d 840 (6th Cir. 2000) (upholding 42 U.S.C. § 1997e(d)(3) as constitutional even though it imposes a cap on the attorney's fees for prisoners but leaves non-prisoners free to recover market-rate attorney's fees). Further, Attorney Howard has roughly nine years of experience, and normally bills at $250 an hour, and Attorney Ndule has eight years of experience. The granting of the same hourly rate sought for all three attorneys is reasonable given the local statistics, their background and experience, and the cap imposed by the PLRA.

Defendant Eddy further argues in his Response that Plaintiff's attorneys should not be awarded the same fee amount for in court and out of court work. (Doc. 85 at 3-5). This argument fails. This Court has previously awarded attorney fees based on a flat hourly amount for all work performed. *See, e.g.*, *Northeast Ohio Coalition for the Homeless v. Husted et al.,* Nos. 2:06-CV-00896, 2:12-cv-00562, 2014 WL 4829597 (S.D. Ohio Sept. 29, 2014); *Libertarian Party of Ohio v. Husted*, No. 2:11-cv-722, 2013 WL 4833033 (S.D. Ohio Sept. 11, 2013). Moreover, the Sixth Circuit has also moved to awarding a single hourly rate for attorney fee

awards. *See, e.g., Hadix v. Johnson,* 398 F.3d 863, 867 (6th Cir. 2005); *see also Adcock-Ladd v. Sec'y of Treasury*, 227 F.2d 343 (6th Cir. 2000).

Therefore, the Court will use the hourly rate of $211.50 for all three of Plaintiff's attorneys to calculate the appropriate attorney's fees.

## V. Reasonableness of the Lodestar Calculation

The PLRA requires the amount of attorney's fees awarded to be "proportionately related to the court ordered relief for the violation" or that the fee be "directly and reasonably incurred in enforcing the relief ordered for the violation." 42 U.S.C. § 1997e(d)(1)(A). Moreover, the amount must not exceed 150 percent of any monetary judgment awarded in the case. § 1997e(d)(2). As the Court noted above, generally, "a strong presumption favors the prevailing lawyer's entitlement to his lodestar fee." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citation and quotation omitted). Moreover, where, as in this case, "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. Additionally, modifications to the lodestar calculation are rarely appropriate and only where "specific evidence" exists in the record to justify such a modification. *Adcock-Ladd*, 227 F.3d at 350.

Plaintiff's attorneys do not claim to have spent time enforcing the relief, so the Court must only consider whether the attorney's fees awarded are "proportionately related to the court ordered relief for the violation." 42 U.S.C. § 1997e(d)(1)(A). As established above, the fees sought for Plaintiff's attorneys are directly related to obtaining the temporary restraining order and preliminary injunction. All three attorneys have submitted declarations indicating that they have conservatively billed, cut some travel time, and refrained from billing in certain instances where multiple attorneys participated. Moreover, upon review, the Court concludes that the

items listed in the time logs are related to the temporary restraining order and preliminary injunction issues in Plaintiff's case.

Defendant suggests that Plaintiff's attorney's fees are not proportionally related to Plaintiff's court-ordered relief. (Doc. 85 at 5-6). He cites the PLRA for the proposition that attorney's fees are capped at 150 percent of a judgment in case. (42 U.S.C. § 1997e(d)(2); Doc. 85 at 5-6). Defendant Eddy contends that since attorney's fees must be "proportionately related to the court ordered relief for the violation," based on the price of Premarin, the attorney's fees sought are disproportionate. (42 U.S.C. § 1997e(d)(1)(B)(i); Doc. 85 at 5-6). Plaintiff responds that PLRA § 1997e(d)(2) is limited to damages and not to injunctive relief. (Doc. 91 at 5).

The 6th Circuit has held that 42 U.S.C. § 1997e(d)(2) does not apply to cases in which non-monetary relief is awarded. *Walker v. Bain*, 257 F.3d 660, 667 n.2 (6th Cir. 2001) (stating that "if non-monetary relief s obtained, either with or without money damages, § 1997e(d)(2) would not apply"). In other words, the 150 percent cap of attorney's fees based on the judgment amount applies only to cases in which the court awards monetary relief. In this case, Plaintiff has been awarded a preliminary injunction. Therefore, the attorney's fee cap limiting the award to 150 percent of the judgment as stated in § 1997e(d)(2) does not apply.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Amended Motion for Attorney's Fees (Doc. 80) is **GRANTED**. Thus, the Court hereby **ORDERS** an award in the amount of $211.50 for a total of 223 hours, or a total of **$47,164.50** in attorney's fees to Plaintiff.

**IT IS SO ORDERED.**

              s/ Algenon L. Marbley
              ALGENON L. MARBLEY
**DATED: March 20, 2015**      UNITED STATES DISTRICT JUDGE